# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45954

MICHAEL JARED THOMPSON, )
)
Petitioner-Appellant, )
)
v. )
)
STATE OF IDAHO, )
)
Respondent. )
)

Boise, August 2018 Term

Filed: December 18, 2018

Karel A. Lehrman, Clerk

———————————

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County.  Hon. Jonathan P. Brody, District Judge.

District court order dismissing petition for post-conviction relief, <u>affirmed.</u>

Nevin Benjamin McKay & Bartlett, LLP, Boise, for appellant. Dennis Benjamin argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.  Russell Spencer argued.

———————————

BURDICK, Chief Justice.

Michael Jared Thompson appeals the district court's order summarily dismissing his petition for post-conviction relief based on ineffective assistance of counsel. Thompson was charged and convicted of involuntary manslaughter with an enhancement for use of a deadly weapon. Thompson's direct appeal was unsuccessful and he filed a petition for post-conviction relief based on ineffective assistance of counsel at trial and on appeal. Thompson argued his trial counsel was ineffective for failing to request proximate and intervening cause jury instructions. He also argued his appellate counsel was ineffective for failing to raise a claim of fundamental error as to the jury instructions. The district court granted the State's motion for summary dismissal of Thompson's petition for post-conviction relief. The Court of Appeals reversed the district court's order summarily dismissing Thompson's petition. This Court granted the State's timely petition for review, and we affirm the district court's judgment.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, Thompson and three friends went out for a night of social drinking. Later that evening, Thompson's friends began to argue and Thompson recommended the group leave in his truck. After his friends continued to argue in the truck, Thompson stated, "if one of you don't shut up, I'm going to shoot somebody." One of the friends, Michael Blair (Blair), laughed, to which Thompson responded, "you think I'm kidding?" Thompson then pulled out a loaded handgun and cocked it twice. Thompson held the gun in his right hand, put his elbow on the center console and pointed the gun upward and backward. Blair then slid over to the middle of the backseat and said, "if you're going to shoot somebody, it might as well be me. End my miserable existence." Blair then put his hand on Thompson's hand, and put his mouth around the barrel of the gun. The gun then went off, killing Blair. Thompson told the others that Blair had pulled the trigger.

Thompson was charged with involuntary manslaughter with an enhancement for use of a deadly weapon. At trial, Thompson's attorney argued that Thompson did not cause Blair's death. Rather, counsel argued, Blair caused his own death when he put his mouth on the barrel of a loaded gun. Thompson's counsel did not request, and the jury was not given, an instruction on proximate or intervening cause. The jury returned a guilty verdict, and Thompson was later sentenced to fifteen years in prison with five years fixed. Thompson appealed his conviction and sentence, and the Court of Appeals affirmed. *State v. Thompson*, No. 40796, 2014 WL 6092429, at *4 (Idaho Ct. App. Nov. 7, 2014).

One year later, Thompson filed a petition for post-conviction relief alleging his trial and appellate counsel were ineffective. Thompson alleged that his trial counsel was ineffective for failing to request proximate and intervening cause jury instructions. Thompson also alleged his appellate counsel was ineffective for failing to assert a claim of fundamental error resulting from the jury not being properly instructed on causation. The State moved for summary dismissal of the post-conviction petition. The district court granted the State's motion to dismiss, stating that by virtue of finding Thompson guilty, the jury found there was causation, and an additional instruction on proximate cause was not necessary and would not have changed the outcome. Thus, the district court determined Thompson's trial attorney was not ineffective for failing to request proximate or intervening cause instructions. As to Thompson's claim of ineffective appellate counsel, the district court stated counsel did not have to raise the arguments Thompson

deemed worthy, and that there was no basis for an intervening cause instruction, as it would not have changed the outcome. Thus, the district court determined Thompson failed to show appellate counsel was ineffective. The Court of Appeals reversed the district court's order summarily dismissing Thompson's petition for post-conviction relief. This Court granted the State's timely petition for review.

## II.    ISSUE ON APPEAL

Did the district court err in summarily dismissing Thompson's petition for post-conviction relief?

## III.    STANDARD OF REVIEW

When addressing a petition for review, this Court will give "serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Schall*, 157 Idaho 488, 491, 337 P.3d 647, 650 (2014) (quoting *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007)). "Proceedings for post-conviction relief are civil in nature, rather than criminal, and therefore the applicant must prove the allegations in the request for relief by a preponderance of the evidence." *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013).

> "Idaho Code § 19-4906 authorizes summary dismissal of an application for post-conviction relief, either pursuant to motion of a party or upon the trial court's own initiative. Summary dismissal of an application is the procedural equivalent of summary judgment under I.R.C.P. 56." "When reviewing the grant of a motion for summary judgment, this Court applies the same standard used by the district court in ruling on the motion." Likewise, when reviewing a district court's order of summary dismissal in a post-conviction relief proceeding, we apply the same standard as that applied by the district court. Thus, when reviewing such a dismissal, this Court must determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file.

*Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010) (citations omitted).

## IV.    ANALYSIS

### A.    Thompson's trial counsel was not ineffective for failing to request proximate and intervening cause jury instructions.

"A defendant claiming ineffective assistance of counsel must show that (1) counsel's representation was deficient; and (2) counsel's deficient performance prejudiced the defendant." *Marr v. State*, 163 Idaho 33, ___, 408 P.3d 31, 35 (2017) (citing *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984)). "To show counsel was deficient, the defendant has the burden of showing that his attorney's representation fell below an objective standard of reasonableness."

3

*Marr*, 163 Idaho at 37, 408 P.3d at 35. "To show that counsel's deficient performance was prejudicial, the defendant must show there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 669).

This Court has said, "[d]efense counsel's failure to object to a reversible jury instruction is objectively deficient performance sufficient to meet the first prong of the *Strickland* inquiry." *Crawford v. State*, 160 Idaho 586, 596, 377 P.3d 400, 410 (2016).However, "if the jury instruction was not reversible error, then failure to object to it cannot have prejudiced the defendant because the lack of reversible error means the jury was not confused or misled by the instruction, and therefore there is no likelihood of a different result at trial had the instruction not been given." *Id.* "Therefore, both the deficient performance and prejudice prongs of the *Strickland* analysis turn on whether the instructions as given were reversible error." *Id.*

"The issue of whether a particular jury instruction is necessary and whether the jury has been properly instructed is a matter of law over which this Court exercises free review." *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996). "Ordinarily the language employed by the legislature in defining a crime is deemed to be best suited for that purpose, and error cannot be predicated on its use in jury instructions." *Id.* (citing *State v. Aragon*, 107 Idaho 358, 362, 690 P.2d 293, 297 (1984)). "Terms which are of common usage and are sufficiently generally understood need not be further defined when instructing the jury." *Id.* "When the instructions, taken as a whole, do not mislead or prejudice a party, even an erroneous instruction does not constitute reversible error." *Crawford*, 160 Idaho at 596, 377 P.3d at 410 (quoting *Chapman v. Chapman*, 147 Idaho 756, 759, 215 P.3d 476, 479 (2009)). Put another way, "[t]he question is whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law." *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010) (quoting *State v. Page*, 135 Idaho 214, 221, 16 P.3d 890, 897 (2000)).

The involuntary manslaughter statute pursuant to which Thompson was charged provides in relevant part that "[m]anslaughter is the unlawful killing of a human being including, but not limited to, a human embryo or fetus, without malice." I.C. § 18-4006. This includes "the operation of any firearm or deadly weapon in a reckless, careless or negligent manner which produces death." *Id.* In this case, the dispute is in regard to the word "produces" and whether that word implies an element of proximate cause into the statute.

4

"[P]roximate cause 'is composed of two elements: cause in fact and scope of legal responsibility.' " *Cramer v. Slater*, 146 Idaho 868, 875, 204 P.3d 508, 515 (2009) (quoting *Doe v. Sisters of Holy Cross*, 126 Idaho 1036, 1039, 895 P.2d 1229, 1232 (Ct. App. 1995)). "Actual cause is the factual question of whether a particular event produced a particular consequence." *Cramer*, 146 Idaho at 875, 204 P.3d at 515 (quoting *Newberry v. Martens*, 142 Idaho 284, 288, 127 P.3d 187, 191 (2005)). However, "true proximate cause focuses on whether legal policy supports responsibility being 'extended to the consequences of conduct.' " *Id.* "[T]rue proximate cause deals with 'whether it was reasonably foreseeable that such harm would flow from the negligent conduct.' " *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011) (quoting *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009)). Thus, the inquiry for this Court is "whether the injury and manner of the occurrence are 'so highly unusual that we can say, as a matter of law that a reasonable [person], making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur.'" *Lampien*, 148 Idaho at 374, 223 P.3d at 757 (quoting *Cramer*, 146 Idaho at 875, 204 P.3d at 515).

An intervening or superseding cause "generally refers to an independent act or force that breaks the causal chain between the defendant's culpable act and the victim's injury." *Lampien*, 148 Idaho at 374, 223 P.3d at 757. "The intervening cause becomes the proximate cause of the victim's injury and removes the defendant's act as the proximate cause." *Id.* at 374–75, 223 P.3d at 757–58. "To relieve a defendant of criminal liability, an intervening cause must be an unforeseeable and extraordinary occurrence." *Id.* at 375, 223 P.3d at 758. However, "[t]he defendant remains criminally liable if either the possible consequence might reasonably have been contemplated or the defendant should have foreseen the possibility of harm of the kind that could result from his act." *Id.*

The jury instructions regarding causation that were given at Thompson's trial are as follows:

Instruction No. 10:

In order for the defendant to be guilty of involuntary manslaughter by negligent use of a deadly weapon, the state must prove each of the following:
1. On or about December 16, 2011 and December 17, 2011
2. in the state of Idaho
3. the defendant Michael Jared Thompson used a firearm with reckless disregard of the consequences and of the rights of others,

5

4. producing the death of Michael Kenneth Blair.

If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

Instruction No. 10a:

The defendant, Michael Jared Thompson, is charged in this case with Involuntary Manslaughter. Manslaughter is the unlawful killing of a human being without malice. In charging the Defendant with involuntary Manslaughter, the State must prove, beyond a reasonable doubt that (1) a death occurred, and (2) the defendant unlawfully caused that death.

In this case, for the reasons discussed below, Thompson's counsel was not ineffective for failing to object to the given jury instructions and instead request proximate and intervening cause instructions.

As an initial matter, we note that the issue of whether the attorney made a strategic or tactical decision in not requesting the instructions was not raised below and is not at issue on appeal. *See Kirk v. Wescott*, 160 Idaho 893, 899, 382 P.3d 342, 348 (2016) (stating that issues not raised below will not be considered on appeal); *Akers v. Mortensen*, 160 Idaho 286, 288, 371 P.3d 340, 342 (2016) ("a party waives an appellate issue that is not supported with relevant argument or authority."). The concurrence contends this issue was raised and decided below and asserts that "Thompson raised the issue by pleading that trial counsel's decision could not have been a strategic decision. The deputy prosecutor responded by arguing that counsel's failure to request jury instructions on proximate cause and superseding, intervening cause was strategic." The concurrence also contends the trial judge ruled on the issue when "the trial judge found trial counsel's performance 'was not deficient.'" We disagree.

While it is true Thompson stated in his petition for post-conviction relief that the inaction on the part of counsel was not a strategic or tactical decision, this one line in Thompson's petition is the extent of the discussion of the issue below. The State's brief in support of dismissing Thompson's petition contains only broad statements of law regarding strategic, tactical decisions, and does not argue that trial counsel's decision in this case was in fact a strategic or tactical decision. Though the State does make an argument that relates to strategic decisions later in its briefing, this argument relates only to gun shot residue evidence, as opposed to the failure to request proximate cause instructions.

The concurrence contends that the State's statement "Thompson must overcome a strong presumption that counsel made all significant decisions in the exercise of reasonable professional

6

judgment" followed by the State's discussion that the case law as it relates to superseding, intervening cause would not have benefitted Thompson is sufficient to show the State argued the issue below. However, this implication is insufficient to demonstrate this issue was raised and argued below. In *State v. Payne*, we stated, "[i]t is generally agreed that the decision of what evidence should be introduced at trial is considered strategic or tactical." 146 Idaho 548, 563, 199 P.3d 123, 138 (citation omitted). Thus, a defendant must provide evidence which suggests that such decision resulted from inadequate preparation, ignorance or other shortcomings. *Id.* In this case, there was no such discussion before the lower court from either Thompson or the State. The concurrence suggests the lower court's statement that "an instruction on intervening cause might well have limited argument counsel could make; the manslaughter instruction did not limit the ways for the defendant to argue that Thompson's conduct produced the death where an intervening cause instruction would have" was sufficient to show "that the district judge recognized defense counsel's omission of an instruction on intervening cause as a strategic decision." We do not read such implication into this statement by the lower court, especially in the void of any argument as to it being a strategic decision. In any event, even if this issue was raised below, it is not at issue on appeal, and as such we do not address it. *See Akers*, 160 Idaho at 288, 371 P.3d at 342 ("a party waives an appellate issue that is not supported with relevant argument or authority.").

Next, it is undisputed that the jury instructions that were given reflected the statutory language of the crime with which Thompson was charged, and as such are normally not erroneous. *See Aragon*, 107 Idaho at 362, 690 P.2d at 297 ("An instruction to the jury that essentially follows the words of a statute normally is not error."). Moreover, the instructions given were in accordance with the Idaho Criminal Jury Instructions (ICJI). *See McKay*, 148 Idaho at 571 n.2, 225 P.3d at 704 n.2 ("The I.C.J.I. are presumptively correct. . . . Trial courts should follow the I.C.J.I. as closely as possible to avoid creating unnecessary grounds for appeal."). Thompson acknowledges this, but contends that the jury should have also been instructed on proximate and intervening cause.

First, Thompson cites to *State v. Monteith*, a vehicular manslaughter case, where the defendant "was charged with involuntary manslaughter, committed by driving an automobile in a reckless, careless, and heedless manner, driving while under the influence of intoxicating liquor, not on his right side of the road, and at an excessive speed." 53 Idaho 30, 33, 20 P.2d 1023, 1024

(1933). This Court stated that the "the issue of proximate cause in this case was for the jury, and the court carefully instructed as to proximate cause and the necessity of the jury finding that negligence or some other unlawful act of the defendant was the proximate cause of the death." *Id.* at 40, 20 P.2d at 1027. Despite Thompson's contentions, a direct comparison cannot be drawn from *Monteith* because there the defendant was charged with vehicular manslaughter, as opposed to involuntary manslaughter through the reckless use of a firearm. *Monteith* did not resolve the word "produces" as is at issue here. Additionally, though vehicular manslaughter cases and the statutory language for vehicular manslaughter at one time required a determination of proximate cause, such has never been required in the case of involuntary manslaughter through the reckless use of a firearm. S.B. 1603, S.L. 1972, ch. 336, ch. 40. And, in 1983 the Legislature redefined the involuntary manslaughter statute, and removed the proximate cause requirement for vehicular manslaughter, later replacing it with "significant cause." H.B. 1, Ex. S. L. 1983, ch.3, § 17; H.B. 143, S.L. 1997, ch. 103, § 1; I.C. § 18-4006(3). Thus, Thompson's reliance on *Monteith* is misplaced.

Next, Thompson cites to *Lampien*, where we articulated the rules of intervening, superseding cause. 148 Idaho at 375, 223 P.3d at 758. We stated,

> An intervening, superseding cause generally refers to an independent act or force that breaks the causal chain between the defendant's culpable act and the victim's injury. The intervening cause becomes the proximate cause of the victim's injury and removes the defendant's act as the proximate cause. To relieve a defendant of criminal liability, an intervening cause must be an unforeseeable and extraordinary occurrence. The defendant remains criminally liable if either the possible consequence might reasonably have been contemplated or the defendant should have foreseen the possibility of harm of the kind that could result from his act. In most contexts, a crime or an intentional tort constitutes an "independent, intervening cause" that precludes a defendant's antecedent crime from being a proximate cause.

*Id.* at 374–75, 223 P.3d at 757–58 (citations omitted). Thompson contends "if counsel had requested causation instructions including an instruction on intervening, superseding cause, the instructions would have been appropriate." Thus, Thompson argues, *Lampien* contradicts the district court's statement that there was no evidence a proximate or intervening cause jury instruction would have been applicable in this case. However, Thompson's argument fails to acknowledge the entirety of the district court's reasoning. The district court did not deny a request for proximate or intervening cause instructions, nor did it say proximate or intervening cause instructions were inappropriate. Rather, the district court said that the statute through the

8

word "produces" required a finding by the jury that Thompson caused Blair's death. And, the jury found causation when it found Thompson guilty. Thus, the court reasoned, a proximate or intervening cause instruction was not necessary nor would it have changed the outcome. Therefore, the court reasoned, Thompson's counsel was not deficient in failing to request such instructions, nor was Thompson prejudiced by the lack of such instructions. Thompson's reliance on *Lampien* to show the district court erred is unpersuasive.

Thompson next cites to *State v. Abdullah*, 158 Idaho 386, 427, 348 P.3d 1, 42 (2015), and argues *Abdullah* holds that "an intervening cause may break the causal chain and prevent conviction for arson." In *Abdullah*, the defendant argued he could not be guilty of first-degree arson because he only poured the gasoline, but did not "provide the ignition source" for the fire, when a water heater pilot light ignited the gasoline before the defendant was able to. *Abdullah*, 158 Idaho at 427, 348 P.3d at 42. The defendant analogized to first-degree murder, likening his pouring of the gasoline to that of an intentional stabbing that does not result in the victim's death, stating the stabbing alone would not be sufficient for first-degree murder. *Id.* at 427–28, 348 P.3d at 42–43. This Court rejected the argument, and stated the defendant's intended result occurred; that is, his willful, unlawful conduct damaged a dwelling by fire. *Id.* at 428, 348 P.3d at 43. This Court went on to discuss the first-degree murder analogy and proximate cause. *Id.* We stated, "[b]ased on our interpretation of Idaho's arson statute, we recognize that in subsequent arson prosecutions an instruction on causation may be necessary depending on the facts of the case." *Id.* However, because the defendant did not raise the issue of causation, the Court did not discuss whether a causation instruction would have been appropriate. *Id.* Thompson contends *Abdullah* stands for the proposition that an instruction on proximate or intervening cause needed to be given. We do not read *Abdullah* so expansively.

First, we note that the jury instruction in *Abdullah* did not contain any causation language at all; rather, it said the State had to prove the defendant "willfully . . . by fire or explosion . . . damaged . . . a dwelling." *Id.* at 427, 348 P.3d at 42. The arson statute itself provided "[a]ny person who willfully and unlawfully, by fire or explosion, damages . . . [a]ny dwelling, whether occupied or not . . . is guilty of arson in the first degree. . . ." *Id.* (quoting I.C. § 18-802). Thus, the Court's reasoning that a causation jury instruction may be needed in appropriate cases was addressing the complete absence of causation language in the arson instruction. In Thompson's case, the jury was instructed on causation, as instruction 10a explicitly required the jury to find

Thompson "unlawfully caused" Blair's death. Additionally, in *Abdullah*, this Court said only that a causation instruction may be needed; it did not state that specific instructions on proximate or intervening cause were required. While *Abdullah* may stand for the proposition that instructions can deviate from the statutory language in appropriate cases, it does not mandate a requirement for proximate and intervening cause instructions. *Abdullah* cannot be read to have required Thompson's trial counsel to request proximate or intervening cause instructions.

Lastly, Thompson cites to *McKay* to support the proposition that Thompson's counsel was ineffective for not requesting proximate cause instructions. 148 Idaho at 572, 225 P.3d at 705. *McKay* does not support the result Thompson seeks. In *McKay*, this Court stated it was ineffective assistance of counsel when counsel failed to object to jury instructions that deviated from the criminal statute and the ICJI. *Id.* The applicable ICJI instructions required the State to prove that the defendant was driving under the influence and that "the defendant's operation of the motor vehicle in such unlawful manner was a significant cause contributing to the death [of the victim]." *Id.* at 571, 225 P.3d at 704 (quoting ICJI 709). However, the instructions given stated the jury could convict the defendant if "while under the influence of alcohol . . . the defendant's operation of the motor vehicle caused the death of [the victim]." *Id.* (internal quotation marks omitted). This Court stated the district court's instructions had two deficiencies. *Id.* First, the district court's instructions omitted the statutory language requiring defendant's driving be a "significant" cause of the death rather than just a cause. *Id.* Second, the instructions omitted the ICJI's language "in such unlawful manner" which therefore did not require the State to prove that the defendant's culpable conduct caused the death. *Id.* This Court determined the defendant had satisfied both prongs of *Strickland* stating, "[i]t is well established that it is a violation of the Due Process Clause and the right to a jury trial for the defendant to be convicted on instructions that omit an element of the crime." *Id.*

In this case, unlike in *McKay*, the jury instructions given were in compliance with both the involuntary manslaughter statute and the ICJI. Unlike in *McKay* where language from the statute and ICJI were omitted, here, no element of the crime was omitted, nor was any ICJI language omitted from the instructions given to the jury. This Court has said that the "language employed by the legislature in defining a crime is deemed to be best suited for that purpose, and error cannot be predicated on its use in jury instructions." *Zichko*, 129 Idaho at 264, 923 P.2d at 971 (citing *Aragon*, 107 Idaho at 362, 690 P.2d at 297). Here, Thompson is attempting to

10

predicate error on jury instructions that completely complied with the statutory language and ICJI. As noted, "[t]he question is whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law." *McKay*, 148 Idaho at 570, 225 P.3d at 703 (quoting *Page*, 135 Idaho at 221, 16 P.3d at 897). Because the instructions complied with the statutory language and the ICJI, the instructions fairly and adequately reflected the applicable law. *See id.* Thus, the instructions would not constitute reversible error. *Id.* Therefore, Thompson has not shown that his counsel was ineffective in failing to object to the given instructions and request proximate and intervening cause instructions. *See Crawford*, 160 Idaho at 596, 377 P.3d at 410 ("both the deficient performance and prejudice prongs of the *Strickland* analysis turn on whether the instructions as given were reversible error.").

Finally, we note that the Idaho Civil Jury Instructions (IDJI) on proximate cause state in relevant part that,

> the expression "proximate cause," [means] a cause that, in natural or probable sequence, *produced* the injury, the loss or the damage complained of. It need not be the only cause. It is sufficient if it is a substantial factor in bringing about the injury, loss or damage. It is not a proximate cause if the injury, loss or damage likely would have occurred anyway.

IDJI 2.30.1, 2.30.2 (emphasis added). Thus, the relevant IDJI instruction contains the word produces—the exact word in the statute that Thompson is challenging. Thompson's reasoning is circular, as he contends on one hand that the word "produces" requires an instruction on proximate cause, but the instruction on proximate cause utilizes the word "produces". Thus, it is unclear how the proximate cause instruction would have aided the jury or led to a different outcome than the instructions as given. *See Marr*, 163 Idaho at 37, 408 P.3d at 35. (Stating that to satisfy the prejudice prong of *Strickland* "the defendant must show there is a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different.") (citing *Strickland*, 466 U.S. at 669). Here, Thompson has not met his burden of showing that the giving of the proximate cause instruction would have resulted in a different outcome.

In sum, it cannot be said that Thompson's trial counsel's actions fell below an objective standard of reasonableness. As discussed, Thompson's counsel requested instructions pursuant to both ICJI and the statute. Thompson contends his counsel should have also requested additional proximate and intervening cause instructions; however, there was no authority requiring his counsel to do so. Because the jury was instructed on causation generally, and because the

11

proximate cause instruction itself contains the word "produces," the district court properly determined that the outcome would not have been different had the jury been instructed on proximate cause. Accordingly, the district court did not err in summarily dismissing Thompson's petition for post-conviction relief as to ineffective assistance of trial counsel.

**B.    The district court did not err when it dismissed Thompson's petition for post-conviction relief based on ineffective assistance of appellate counsel.**

Thompson also contends his appellate counsel was ineffective for raising a sufficiency of the evidence claim on appeal, rather than raising a claim of fundamental error as to the jury instructions on causation. The district court summarily dismissed this claim, determining Thompson's appellate counsel was not ineffective. The district court stated that appellate counsel did not have to raise any specific claims Thompson wanted, and because there was no basis for a proximate or intervening cause instruction, the outcome in Thompson's case would not have been different. We affirm the district court's summary dismissal.

"The effectiveness of appellate counsel is reviewed under the same standard as trial counsel." *Crawford*, 160 Idaho at 597, 377 P.3d at 411 (quoting *Dunlap v. State*, 159 Idaho 280, 296, 360 P.3d 289, 305 (2015)). Thus, a defendant must demonstrate "that (1) counsel's representation was deficient; and (2) counsel's deficient performance prejudiced the defendant." *Marr*, 163 Idaho at ___, 408 P.3d at 35 (citing *Strickland*, 466 U.S. at 688–92). "Appellate counsel is not required to raise every issue available to the defendant." *Crawford*, 160 Idaho at 597, 377 P.3d at 411. "Rather, '[t]o demonstrate deficient performance of appellate counsel for failure to raise a claim on appeal, the defendant must show that counsel made an objectively unreasonable decision to omit the claim.' " *Id.* at 598, 377 P.3d at 412 (quoting *Dunlap*, 159 Idaho at 296, 360 P.3d at 305). "Courts have recognized that appellate counsel may fail to raise an issue on appeal because counsel 'foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.' " *Dunlap*, 159 Idaho at 296, 360 P.3d at 305 (quoting *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989)). Thus, generally "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Dunlap*, 159 Idaho at 297, 360 P.3d at 306 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

The Idaho Court of Appeals has held that appellate counsel cannot be ineffective for failing to raise a claim of fundamental error on an issue not preserved by an objection at trial.

*Mintun v. State*, 144 Idaho 656, 662, 168 P.3d 40, 46 (Ct. App. 2007); *see also McKay v. State*, No. 34271, 2008 WL 2600863, at *2 n. 2 (Idaho Ct. App. July 2, 2008) ("This Court has held, for a variety of practical and equitable reasons, that no claim of ineffective assistance of appellate counsel lies for failure to raise as fundamental error an issue not preserved in the trial court."). Thompson acknowledges this but asks this Court to overrule *Mintun* and its progeny. We do not address this argument, as Thompson did not present this argument below. This Court has said, "[w]e decline to adopt a 'wrong result-wrong theory' approach to reverse a lower court's decision based on issues neither raised nor argued below." *State v. Garcia-Rodriguez*, 162 Idaho 271, 276, 396 P.3d 700, 705 (2017). Thus, we affirm the district court's summary dismissal.

## V.     CONCLUSION

The district court did not err in summarily dismissing Thompson's petition for post-conviction relief. Accordingly, the district court's judgment is affirmed.

Justices HORTON, BEVAN and MELANSON, Pro Tem, **CONCUR**.

STEGNER, Justice, concurring.

I agree with the majority in its conclusion that the district court properly dismissed Thompson's petition for post-conviction relief. However, the majority also concluded "that the issue of whether [Thompson's trial] attorney made a strategic or tactical decision in not requesting the instructions was not raised below." Because I respectfully disagree with this statement, I find it necessary to write a concurrence.

Thompson raised the issue below by pleading that trial counsel's decision could not have been a strategic decision. The deputy prosecutor responded by arguing that counsel's failure to request jury instructions on proximate cause and superseding, intervening cause was strategic. And, the trial judge found trial counsel's performance "was not deficient." Consequently, the issue was not only raised below – the judge explicitly ruled on it.

Thompson alleged in his verified petition that his trial counsel's "[i]naction [in failing to request proper jury instructions] cannot be attributed to an exercise of reason or representative of strategic tactile [sic] decision making; but clearly does indicate oversight." As such, the issue was raised in the petition and the State was put on notice of it. Subsequently, both the State and the district court addressed the issue.

13

In analyzing Thompson's claims, the deputy prosecutor identified Thompson's initial claim of ineffective assistance of counsel as "First Claim: Failure to Request Proximate Cause and Intervening Cause Jury Instruction(s)[.]" The deputy prosecutor's introductory topic heading is followed by this statement: "Thompson must overcome a strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment."

The deputy prosecutor next argued, "the giving of a jury instruction regarding proximate cause, as a matter of law, would not have altered the verdict or establish[ed]" ineffective assistance of counsel. The deputy prosecutor also argued that the case law as it relates to superseding, intervening cause would not have benefitted Thompson. The deputy prosecutor cited *State v. Corbus*, 150 Idaho 599, 249 P.3d 398 (2011) for the proposition that "[t]he defendant remains criminally liable if either the possible consequence might reasonably have been contemplated or the defendant should have foreseen the possibility of harm of the kind that could result from his act." *Id.* at 402, 249 P.3d at 603 (citations omitted).

The district judge found "an instruction on intervening cause might well have limited argument counsel could make; the manslaughter instruction did not limit the ways for the defendant to argue that Thompson's conduct produced the death where an intervening cause instruction would have." In addition, and as noted, the trial judge found counsel's performance "was not deficient." These statements reflect that the district judge recognized defense counsel's performance in not requesting the instructions as a strategic decision.

Consequently, I believe it is inaccurate to say "that the issue of whether [Thompson's trial] attorney made a strategic or tactical decision in not requesting the instructions was not raised below." The words "tactical decision" may not have been expressly used by either trial counsel or the trial judge. Nevertheless, I think a fair reading of the record below indicates one basis for the trial judge's decision was that defense counsel's decision to not request the jury instructions was one of tactics, rather than incompetence.

Because the parties have not raised counsel's tactical decision-making on appeal, that issue need not be addressed. Ultimately, I concur with the majority's opinion.